Commonwealth ex rel. Chila, Appellant, *v.* Chila.

Argued September 10, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and SPAETH, JJ.

*Anthony S. Guido,* for appellant.

*Edward T. Kelley,* for appellee.

OPINION BY CERCONE, J., December 11, 1973:

This is an appeal from an order of the Court of Common Pleas of Clearfield County, remitting arrearages and increasing a support order.

The lower court entered an order of support dated April 17, 1957, which provided for the payment of $50 per month by the appellee, Philip Chila, for the support of a child and procedures for visitation. A hearing was held before the lower court on July 23, 1971, on a petition to review the 1957 order. As a result thereof, the lower court entered an order increasing the support

payments from $50 to $75 a month based upon appellee's then capacity to pay and his voluntary agreement to do so. The court held open the question of $4,070 in arrearages claimed by the appellant, Mrs. Chila, until further investigation could be made by the court. A final hearing was held on September 13, 1972,[1] at which time the lower court confirmed its previous support order and remitted the claim for arrearages from $4,070 to $230.

Appellant's first claim is that the lower court abused its discretion in remitting arrearages from $4,070 to $230. The lower court summarized the relevant testimony before it as follows: "Although Mrs. Chila complains of the rough and arrogant attitude of her former husband when he first attempted to exercise visitation rights, in the opinion of the court such a response was either initiated by her expressed objective showing of dislike towards him and/or by the continued refusal of she [sic] and her parents to reveal her location and the location of the child. His conduct was nothing more than a natural response to her defiance of the initial court order. When defendant finally did begin to recover from his extreme financial straights [sic] and attempted to give her $75 in cash, she refused it and also refused visitation with his son. (R-p. 15). During all this period Mr. Chila was in constant contact with the Clearfield County probation office and although the record does not show a direction to him not to continue with his payments, considering a man of his limited education having foremost in his mind Judge Pentz's initial order which on its face coupled payment with visitation, *the Clearfield County probation office clearly indicated to him that they did not expect payment as they could not forward it to the proper person*; (R-p.

---

[1] The final order appealed from was entered on November 24, 1972.

17, 21) (emphasis supplied) likewise the records of the Clearfield County probation office clearly supports his periods of unemployment both due to injury, recession and strike and they certainly indicated a condonation of his actions in not instituting proceedings to enforce his support order at these earlier dates. He had every right to consider that his payments within his financial ability and circumstances were in full payment and that arrearages were not accumulating except as hereinabove noted and assessed."

We agree with appellant's statement of the law that matters of support are separate and independent from problems of visitation and custody and that ordinarily, a support order must be paid regardless of whether the wife is wrongfully denying the father's right to visitation. *Commonwealth v. Mexal,* 201 Pa. Superior Ct. 457 (1963) ; *Commonwealth ex rel. Mickey v. Mickey,* 220 Pa. Superior Ct. 39 (1971) ; *Commonwealth ex rel. Crane v. Rosenberger,* 212 Pa. Superior Ct. 144 (1968). Contrary to appellant's argument, however, these cases are either distinguishable under their facts or they support rather than contradict the decision rendered by the lower court. *Commonwealth ex rel. Mickey v. Mickey,* supra, is not controlling in that its holding was primarily limited to our again accepted pronouncement that ordinarily support payments cannot be suspended due solely to a denial of visitation. Although in *Mickey,* supra, the wife had also moved from her original location, there is no indication that she repeatedly withheld information as to her new address from her husband as well as from the probation officials. Furthermore, in the instant case the husband was instructed by the probation authorities that he did not have to make further support payments. The case of *Commonwealth ex rel. Crane v. Rosenberger,* supra, lends support to the decision rendered by the court below. In *Rosenberger,* supra, support payments were likewise not paid based

upon the husband's reliance on a letter from the probation officer indicating to him that the wife's denial of visitation would justify a suspension of the support order. There we held that the husband's understandable reliance on the probation officer's letter and the wife's failure to take any action over many years to enforce the support order[2] were sufficient reasons to justify the remission of arrearages. *Id.* at 147. While in *Rosenberger,* we held that the facts justified remission of arrearages, we did not agree with the lower court as to the "drastic" amount that arrearages were reduced and we therefore modified the order accordingly. In the instant case, however, the facts require us to make only a minor modification.[3]

In the present case, Mrs. Chila not only denied visitation rights but in addition denied the knowledge of her whereabouts and the whereabouts of the child both

---

[2] In *Rosenberger,* there was a 10-year period of inaction by the wife to enforce the support order. In the present case, the period of inaction was even longer and although we do not find it necessary to base our decision on this fact alone we do emphasize that "the passage of an extended period of time may require a re-analysis of the rights and obligations of the respective parties and a remission of arrearages if warranted by the circumstances." *Commonwealth ex rel. Crane v. Rosenberger,* supra. Also see *Commonwealth v. Cieply,* 162 Pa. Superior Ct. 346, 350 (1948).

[3] We do find it necessary to make a slight modification of the arrearages based upon a minor error in computation as follows: at the end of 1961 there was a net arrearage of $480; the $150 deficiency during the year of 1968 was excusable due to a strike in the industry in which appellee worked; from this $480 remaining figure, we subtract an additional $75 which was paid over a three-month period prior to the last hearing on September 13, 1972. We therefore set the total figure for arrearages at $405 as of the hearing dated September 13, 1972. As to all other years beginning from the date of the original support order in 1957, we find after a careful review of the record that payment was either regularly met or excused due to unemployment, injury or illness, or for other reasons as set forth in this opinion.

to the defendant and to the Clearfield County probation office responsible for enforcing the order, both she and her parents knowing full well through the Clearfield County probation office that it could not forward the support money ordered except to the person in whose custody and control the child was being cared for. In effect she and her parents clearly demonstrated that she did not want or expect the support payments and thus effectively refused them just as effectively as she refused the $75 cash contribution offered by Mr. Chila at an attempted visitation. Thus combining her conduct with the assurances given to Mr. Chila by the Clearfield County probation office, Mr. Chila had every right to understand and expect that he was not accumulating arrearages, except as assessed by the court below. Accordingly, the decision of the lower court in remitting arrearages is affirmed, but in the adjusted amount of $405.[4]

Appellant's second contention is that the support order, as increased by the lower court to $75 per month, was in itself inadequate. As to this issue, however, we are unable to render a proper evaluation or disposition due to the incomplete state of the record. We therefore remand to the lower court for further proceedings concerning the adequacy of its $75 per month order for the support of the 16-year-old child, taking into consideration the needs of the child, standard of living, net income and expenses of both parents, and other relevant factors.[5]

Order of the court remitting arrearages is modified and, as modified, is affirmed and case remanded for further proceedings on the issue of adequacy of the support order.

---

[4] For computation in arriving at this adjusted figure, see Footnote 3, supra.

[5] See generally 28 P.L.E. Parent and Child §53 (1960).